SUPERIOR MEAT PRODUCTS, INC., ET AL. *v.* HOLLOWAY.

[No. 16,919. Filed April 30, 1943.]

*Hulbert, Marlatt & Johnson,* of Gary, for appellants.

*Crumpacker & Friedrich,* of Hammond, for appellee.

DOWELL, J.—This was an action brought by appellee, plaintiff below, as administratrix of the estate of John Holloway, deceased, for the benefit of the next of kin of the decedent to recover damages for the wrongful death of decedent, who died as the result of injuries received in a collision between the automobile driven by decedent and a meat truck operated by appellant Einikis which occurred on September 12, 1939, at a street intersection in the City of Gary, Indiana. Liability was predicated upon alleged negligence of appellant Einikis as agent, servant and employee of appellant, Superior Meat Products, Inc., in the operation of the meat truck during the usual and ordinary course of his employment by said Superior Meat Products, Inc.

Trial was by jury and from judgment on the verdict for appellee in the sum of $5,000 appellant appeals.

The sole error assigned is the overruling of appellant's motion for a new trial, which questions the sufficiency of the evidence to sustain the verdict and asserts that the verdict is contrary to law.

A review of the evidence in the light most favorable to the appellee discloses the following facts:

The collision occurred at the intersection of Jefferson and 42nd Streets in the City of Gary. Jefferson Street was, at the time, a three-lane concrete highway about 28 feet wide running in a north and south direction. Each side of the street was bounded by a curb six inches high and beyond the curb, on both sides of the street were cement sidewalks five feet in width. It was a residential street. Forty-second Street was a gravel road about twenty feet wide running in an east and west direction. It had no curbing nor sidewalks, nor

were there any residences on either side near the point where it intersected Jefferson Street. At a point approximately one block west of the intersection, the grade of 42nd Street was elevated a number of feet above the grade at the intersection and the street sloped downward from said point to its intersection with Jefferson Street, the place of collision. Neither Jefferson Street nor 42nd Street were preferential highways and there were no stop signs or traffic lights at the intersection. One block immediately north of the intersection Jefferson Street came to a dead end at 41st Street. Jefferson Street was a level, heavily traveled paved highway while 42nd Street was a lightly traveled cross street. From a point on 42nd Street fifty feet west of the intersection the view to the south down Jefferson Street was clear so that a person in an automobile or a truck at such point could see for more than half a block south down Jefferson Street.

On the morning of September 12, 1939, John Holloway, who lived on Jefferson Street about two blocks south of the intersection herein described left his home at about 8:05 o'clock to drive to work. He drove his automobile north on Jefferson Street until he reached the said intersection. As he entered the intersection a loaded meat truck weighing about 8,500 pounds, driven by appellant Einikis and proceeding down grade in an easterly direction on 42nd Street, entered Jefferson Street and struck Holloway's car at the left rear portion thereof. As a result thereof the Holloway car was thrown against the cement curbing on the east side of Jefferson Street where the right rear wheel was broken and the car, upsetting, rolled or slid a distance of about sixty feet north on Jefferson Street. Holloway was thrown from the car and was unconscious when taken.

to the hospital where he died five days later without regaining consciousness.

There were no witnesses to the collision other than appellant Einikis. Three policemen arrived within a few minutes after the collision and examined the condition of the two vehicles, the markings on the streets and curbing and the general physical conditions about the scene.

At the time of the collision appellant Einikis, who was a meat seller, was traveling a regular territory delivering meat which he had obtained from appellant Superior Meat Products, Inc. The truck which he was operating was painted yellow and bore a sign "Superior Meat Products."

The policemen who arrived on the scene shortly after the collision testified that the left rear fender of the Holloway car bore the imprint of a bumper and bits of yellow paint and that the right front fender of the truck had been mashed, the bolt which held the bumper to the bracket broken off and that yellow paint had been rubbed or scraped from the radiator grill. Their further testimony was that they found skid marks ten or twelve feet in length in the loose gravel of 42nd Street and that these marks extended eastward to a point approximately three feet west of the center line of the intersection and that these were the only skid marks about the scene; that when they arrived they found the truck facing eastward and stationary at a point northeast of the center of the intersection.

The appellant Einikis testified that the truck had been registered in the name of Superior Meat Products Company continuously since 1935 and that he himself carried a chauffeur's license instead of an operator's license; that the signs which the truck bore were placed thereon by the Superior Meat Products Company. The

evidence further showed that Einikis had a regular route assigned to him by the Superior Meat Products Company and that he was traveling a portion of this route at the time of collision.

Appellant complains that the evidence is insufficient to show that the Holloway car was actually struck by the truck and insists that the testimony by Einikis was the only evidence on the subject; that Einikis' testimony was that the Holloway car, driven at a speed of from 50 to 60 miles per hour, swerved in the intersection and side-swiped the truck after it had come to a full stop on the west side of the intersection.

It is true that Einikis so testified and that his was the only eye witness testimony on the subject; it is likewise true, however, that Einikis also stated that he did not know how fast the Holloway car was traveling; and that he did not bring the truck to a full stop before the moment of impact; but we believe that counsel has fallen into the common error so frequently indulged in by lawyer and layman alike, i. e., the failure to observe the distinction between the words "testimony" and "evidence."

Although quite often used interchangeably the terms "testimony" and "evidence" are not synonymous. Testimony is evidence; but evidence may or may not be testimony, or may, and in most cases does, consist of more than testimony. The word "testimony" is a restricted term, consisting only of the statements of witnesses; while the word "evidence" is a comprehensive term, embracing not only testimony, but whatever may properly be submitted to a court or jury to elucidate an issue or prove a case. *Harris* v. *Tomlinson et al.* (1892), 130 Ind. 426, 30 N. E. 214; *Ingel* v. *Scott* (1882), 86 Ind. 518; *C. U. Telephone Co. et al.* v. *State, ex rel. Board Comm'rs of Tippecanoe Co.*

(1887), 110 Ind. 203, 12 N. E. 136; *Crooks* v. *Harmon* (1905), 29 Utah 304, 81 P. 95.

In the case at bar the jury had before it, in the way of evidence, not only the testimony of Einikis, but the testimony of others as to physical conditions in and about the place of collision, photographs disclosing other physical conditions, such as the condition of the vehicles after the collision, that of the streets and intersection, the grade and character of the surfaces thereof, testimony as to the imprint of a bumper on the Holloway car, the yellow paint clinging thereto, the location of the truck shortly after the collision, the fact that 42nd Street came to a dead end one block north of the point of collision tending to refute Einikis' statement that the Holloway car was traveling at a high speed, and many other facts and circumstances in the way of evidence. The jury had a right to consider all of this evidence and to draw reasonable inferences therefrom. It likewise had a right to believe or disbelieve the testimony of Einikis or that of any other witness or to believe a part thereof and disbelieve a part. That it chose to rely on circumstantial evidence and other testimony rather than that of appellant Einikis is not a matter in which this court can interfere.

Appellant also contends that the evidence is insufficient to establish the existence of the relationship of employer and employee between the Superior Meat Products, Inc., and Einikis.

It is well settled, we think, under the doctrine of *respondeat superior* that a court or jury may look to the conduct of parties in order to determine the existence of the relationship of employer and employee. *Estes* v. *Anderson Oil Co.* (1931), 93 Ind. App. 365, 176 N. E. 560; *Fairway Coffee Co.* v. *Selch* (1934), 98 Ind. App. 136, 183 N. E. 323.

In the instant case the evidence showed that the truck was registered in the name of the appellant, Superior Meat Products, Inc.; that it placed thereon the legend "Superior Meat Products"; that it assigned a regular and designated route to Einikis; that Einikis operated the truck by virtue of a chauffeur's license rather than an operator's license. This evidence, we believe, is sufficient to support a reasonable inference of the existence of the employer-employee relationship between the appellants. That the evidence also showed that Einikis was remunerated by commission or profit instead of wages or salary, could not, we think, be of sufficient force to warrant this court in disturbing the verdict in this regard.

A consideration of all the evidence given in the trial below convinces us that it was amply sufficient to sustain the verdict. It is true that the evidence, as is often the case in negligence actions, is somewhat conflicting on some material issues, but this court will not weigh the evidence to determine where the preponderance lies.

Appellant also urges that the decedent, Holloway, was guilty of contributory negligence as a matter of law. In this regard also, the testimony of Einikis himself was the only eye witness testimony on the subject. But on this point also the testimony of Einikis was within itself conflicting. He first stated that he did not know how fast the Holloway car was traveling immediately before the collision; later he testified that the speed was between 50 and 60 miles per hour. His entire testimony, likewise, conflicts with other evidence given in the cause, largely circumstantial, it is true. But where evidence is conflicting on the question of contributory negligence such question becomes

one of fact to be determined by the jury, not one of law, and this court will not disturb the verdict of the jury on the question. *Indiana Union Traction Co.* v. *Love* (1913), 180 Ind. 442, 99 N. E. 1005; *Kraning* v. *Bloxson, Admx.* (1937), 103 Ind. App. 660, 5 N. E. (2d) 649, 9 N. E. (2d) 107.

Appellants also assign as error the refusal of the court to give to the jury defendant's instructions numbered from 1 to 25, inclusive, separately and severally tendered by the defendants below. Since appellants' brief discusses only instructions 1, 2, 15 and 18, questions as to the remainder of defendants' instructions are deemed waived.

Defendants' instructions 1 and 2 refused by the court directed the jury to return a verdict for each defendant separately. In the light of opinions heretofore expressed herein we believe the trial court properly refused these instructions. In considering a motion for a directed verdict, the court considers only that evidence favorable to the plaintiff. *Montfort* v. *Indianapolis, etc., Traction Co.* (1920), 189 Ind. 683, 128 N. E. 842.

Instruction numbered 15 tendered by the defendants, appellants herein, and refused by the trial court was a statement of the Indiana statute containing certain so called "rules of the road." That portion of same pertinent to the question here involved is as follows: "No vehicle shall at any time be driven to the left side of the roadway . . . when approaching within one hundred feet of or traversing any intersection or railroad grade crossing."

The trial court in instruction numbered 26, given of its own motion, informed the jury that "it is the duty of all drivers of motor vehicles to so operate and drive the motor vehicle he is driving as to keep to the right

of the center line of the paved or traveled portion of the street or highway" and further stated that if by reason of failure so to do an accident occurs which was proximately caused by such failure then such driver would be negligent in failing to comply with this rule of the road.

We are of the opinion that the substance of defendants' instruction numbered 15 was covered by the trial court's instruction above set out and that the trial court did not err in its refusal of defendants' instruction.

Instruction numbered 18 tendered by the defendants and refused by the court in substance was to the effect that the plaintiff's right of recovery was no greater than the right of the decedent, had he lived; that if decedent was guilty of contributory negligence, the plaintiff administratrix could not recover.

Instructions 9, 13 and 14 given by the trial court of its own motion correctly and amply instructed the jury on the law of contributory negligence.

We, therefore, perceive no error in the trial court's refusal of defendants' instruction numbered 18.

Appellants further contend that the trial court erred in refusing to grant their separate and several motion to require the jury to retire and answer definitely and completely interrogatories numbered 11 and 12 which were two of 54 interrogatories submitted by the court at the instance of defendants. Numbers 11 and 12 and the answers thereto are as follows:

"11. How fast was the Packard automobile moving as it approached 42nd Avenue?

"Answer: No evidence.

"12. How fast was the Ford truck moving as it approached Jefferson Street?

"Answer: No evidence."

Under the authority of *The Cleveland, Columbus, Cincinnati and Indianapolis R'y Co.* v. *Asbury* (1889), 120 Ind. 289, 22 N. E. 140, the appellant insists that the answers were evasive and improper and that the jury should have been required to answer same completely and fully.

We cannot agree with appellants' contention in this regard. In the case cited by counsel, i. e., *Cleveland, etc., R. Co.* v. *Asbury, supra,* the jury's answers to certain interrogatories were, "We don't know," or words of similar import. The Supreme Court there properly held that such answers were evasive and improper and it has been held many times that such words are not answers.

But a different rule seems to obtain when a jury answers, "No evidence." It has been held that such an answer amounts to a finding against the party having the burden of proving the facts inquired about. *Vanosdol, Receiver* v. *Henderson, Adm.* (1939), 216 Ind. 240, 22 N. E. (2d) 812; *Chicago & Erie R. Co.* v. *Patterson* (1941), 110 Ind. App. 94, 34 N. E. (2d) 960; *Indianapolis Abbatoir Co.* v. *Temperly* (1903), 159 Ind. 651, 64 N. E. 906.

Other points raised for our consideration by appellants question the sufficiency of the evidence to sustain answers to certain other interrogatories.

An examination of the record discloses that the answers to these interrogatories were positive, full and complete and that they revealed the viewpoint of the jury as follows: That the truck and the automobile entered the intersection at the same time; that at the moment of impact the truck was partly west of the center line of Jefferson Street and partly east thereof; that the left rear of the automobile was not west of the

center line of Jefferson Street at that moment but was on the east, or right side; that at the time of collision there was an oral agreement of employment between appellants; that appellant Superior Meat Products, Inc., purchased the truck which was afterward purchased by Einikis; that at the time of collision Einikis was acting under the direction of officers of Superior Meat Products, Inc., and that he was compelled to purchase some meat from that corporation; that Einikis could not sell meat anywhere he chose and that Superior Meat Products, Inc., to some extent, had supervision of the meat business operated by Einikis.

We have expressed elsewhere herein our opinion as to the sufficiency of the evidence generally. The answers to the interrogatories were consistent with that evidence and certainly not in conflict with the general verdict.

We find no error.

Judgment affirmed.

Draper, J., not participating.

NOTE.—Reported in 48 N. E. (2d) 83.