**Raymoundo Montilla BERNAL,**
**Petitioner,**

v.

**IMMIGRATION AND**
**NATURALIZATION SERVICE,**
**Respondent.**

**No. 97–70008.**

United States Court of Appeals,
Ninth Circuit.

Submitted June 4, 1998.[*]

Decided Sept. 2, 1998.

---

[*] The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a); 9th Cir. R. 34–4.

Michelle K. Lieberman, Korenberg, Abramowitz & Feldun, Encino, California, for petitioner.

John Andre, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for respondent.

Before: O'SCANNLAIN, TROTT, and FERNANDEZ, Circuit Judges.

TROTT, Circuit Judge:

### BACKGROUND

On October 19, 1984, Raymoundo Montilla Bernal immigrated to the United States, representing himself to be the unmarried son of a lawful permanent resident alien. As it turned out, however, Mr. Bernal had previously married Girlie M. Marty, a citizen of the Philippines, in a civil ceremony in the Philippines on November 16, 1980. The ceremony was performed by the Municipal Mayor of Subic. The marriage was attended by the couple's parents and was witnessed by them. It was also recorded in the municipal registry of the city of Subic.

On November 20, 1989, Mr. Bernal applied to become a naturalized citizen of the United States. During his naturalization interview conducted on May 24, 1990, Mr. Bernal stated under oath to the INS examiner that he had not been married in either a civil or a religious ceremony before immigrating to the United States in 1984. In his application for naturalization, he noted that he was married to Girlie M. Marty in the United States on June 3, 1986 in a ceremony in the United States.

On January 13, 1991, the INS issued an order to show cause charging Mr. Bernal with deportability for being within a class of aliens excludable at the time of entry. The INS charged that Mr. Bernal's immigrant visa was obtained by fraud or by willful misrepresentation of a material fact concerning his marital status. *See* 8 U.S.C. § 1251(a)(2). The order to show cause also charged that Mr. Bernal had entered the United States while not in possession of a valid, unexpired immigrant visa, under section 212(a)(20) of the Immigration and Nationality Act (INA).

Mr. Bernal then applied for a suspension of deportation, asylum, and for withholding of deportation. In the alternative, he requested voluntary departure. During his deportation hearing, Mr. Bernal argued that he did not consider the marriage ceremony in the Philippines valid. Mr. Bernal failed to cite any Philippine law to support this assertion and the immigration judge (IJ) found Mr. Bernal to be not credible.

The IJ found Mr. Bernal had immigrated to the United States by falsely representing himself as an unmarried child of a permanent resident alien. The IJ concluded that Mr. Bernal could not demonstrate good moral character for the required seven years in light of his false testimony before the naturalization examiner in 1990. The IJ denied Mr. Bernal's application for relief from deportation and for voluntary departure and ordered him deported.

Mr. Bernal appealed the decision to the Board of Immigration Appeals (Board) which affirmed the IJ's decision and dismissed the appeal. Mr. Bernal petitions this court to review the Board's decision.

## DISCUSSION

■ A finding of statutory ineligibility for suspension of deportation or voluntary departure based on lack of good moral character is reviewed for substantial evidence. *Mabugat v. INS*, 937 F.2d 426, 431 (9th Cir.1991); *Hernandez–Luis v. INS*, 869 F.2d 496, 498 (9th Cir.1989). The INS is granted wide discretion in evaluating the applicant's character. *Mabugat*, 937 F.2d at 432.

In order to be eligible for suspension of deportation, an applicant must be physically present in the United States for seven years prior to the issuance of a notice to appear and must show "good moral character" for the seven year period. 8 U.S.C. § 1254(a)(1). In order to be eligible for voluntary departure, the applicant must demonstrate the ability to depart at his own expense. In addition, the applicant must demonstrate that he is of good moral character for a period of at least five years prior to the application for voluntary departure. 8 U.S.C. § 1254(e). For purposes of the INA, an applicant cannot be regarded as a person of good moral character if "during the period for which good moral character is required to be established," the applicant gave "false testimony for the purpose of obtaining benefits under this chapter." 8 U.S.C. § 1101(f)(6).

Mr. Bernal gave false testimony under oath before a naturalization examiner. During Mr. Bernal's naturalization examination, he was sworn under oath. Under oath, he misled the INS officer about his marital status at the time of his immigration to the United States. The INS officer recorded Mr. Bernal's pertinent answers on the interview form and annotated the form in red ink. The officer noted that Mr. Bernal "claims no other wives: subject states he was single and not married in either a religious or civil ceremony prior to immigrating to the U.S.A. in 1984."

■ Mr. Bernal claims that the statements he made under oath during the naturalization examination were not "testimony" pursuant to 8 U.S.C. § 1101(f)(6). He relies on this court's decision in *Phinpathya v. INS*, for the proposition that the term "testimony" does not encompass all statements, or even all statements made under oath. 673 F.2d 1013, 1018–19 (9th Cir.1981), *rev'd on other grounds*, 464 U.S. 183, 104 S.Ct. 584, 78 L.Ed.2d 401 (1984).

■ The term "testimony" is limited to oral statements made under oath. *Kungys v. United States*, 485 U.S. 759, 780, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). Moreover, this circuit has held that "the term testimony does not encompass all statements, or even all statements made under oath. Testimony means a statement made by a witness under oath for the purpose of establishing proof of

a fact to a court or tribunal." *Phinpathya,* 673 F.2d at 1019. We held in *Phinpathya* that testimony is distinct from "statements made under different circumstances, and from evidence derived from writings and other sources." *Id.* (citing *State v. Ricci,* 107 R.I. 582, 268 A.2d 692, 697 (1970)). The *Phinpathya* court held that because the petitioner's false statements were written on her application for suspension of deportation, they were not statements "made by a witness under oath to establish proof of a fact to a court or tribunal," and therefore did not qualify as "false testimony" within the meaning of the statute. *Id.*

■ An INS officer is authorized "to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, [and] to administer oaths." 8 U.S.C. § 1446(b). Thus, the statements made by an applicant in a naturalization examination are "testimony" within the meaning of 8 U.S.C. § 1101(f)(6). An applicant's false oral statements made under oath in a question-and-answer statement before an INS officer in connection with any stage of the processing of a visa constitute false testimony within the meaning of 8 U.S.C. § 1101(f)(6). *See Matter of Ngan,* 10 I & N Dec. 725, 1964 WL 12125 (BIA 1964).

The statements made by Mr. Bernal under oath during his naturalization examination were false and were made for the purpose of obtaining immigration benefits. The statements therefore constitute "false testimony for the purpose of obtaining benefits" and squarely fall within the good moral character exceptions of 8 U.S.C. § 1101(f)(6).

Mr. Bernal requested the privilege of voluntary departure. However, his false testimony during the naturalization examination precludes granting such a privilege. Based on his 1990 testimony, the IJ was correct in denying Mr. Bernal's request for a voluntary departure. *See* 8 U.S.C. §§ 1101(f)(6); 1254(e)(1).

Petition for review is DENIED.