**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUN 8 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CARLOS R. CARIAS,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No.    17-70695

Agency No. A071-592-093

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted June 4, 2020**
Pasadena, California

Before:  OWENS and BUMATAY, Circuit Judges, and MOLLOY,*** District Judge.

Carlos Carias petitions for review of the Board of Immigration Appeals'

("BIA") decision affirming the denial of his application for suspension of

---

\*       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*      The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*     The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

deportation. We have jurisdiction under 8 U.S.C. § 1252. *See Gomez-Lopez v. Ashcroft*, 393 F.3d 882, 883–84 (9th Cir. 2005). We review questions of law de novo and factual findings for substantial evidence. *Cui v. Mukasey*, 538 F.3d 1289, 1290 (9th Cir. 2008). An alien's statutory ineligibility for suspension of deportation based on a lack of good moral character is a question of fact. *Ramos v. INS*, 246 F.3d 1264, 1266 (9th Cir. 2001). Because we find substantial evidence supports the BIA's decision, we deny Carias's petition.

The BIA determined that Carias could not show that he was a person of good moral character, as required to obtain suspension of deportation, because Carias gave "false testimony for the purpose of obtaining [an immigration] benefit[]." 8 U.S.C. § 1101(f)(6); *see also* 8 U.S.C § 1254(a)(1) (1994) (repealed). Specifically, the BIA upheld the Immigration Judge's ("IJ") determination that, at a March 2015 hearing, Carias falsely testified that a signature on his asylum application was not his and that he did so to obtain an immigration benefit.

Substantial evidence supports the finding of false testimony. At a 2015 hearing, Carias unambiguously testified that the signature on his asylum application was not his. Yet, this contradicted his equally unambiguous testimony from a 2012 hearing that the same signature *was* his. Nor did he offer an adequate explanation for the discrepancies in his testimony. Moreover, in a prior motion before the IJ, Carias admitted, through his counsel, that he reviewed a copy of his asylum

2

application and the signature on it was his. Finally, as the IJ who observed his demeanor found, Carias was evasive during his 2015 testimony. *See Paredes-Urrestarazu v. INS*, 36 F.3d 801, 817 (9th Cir. 1994) (recognizing that we afford substantial deference to findings based on an adverse credibility determination).

Likewise, substantial evidence supports the finding that this false testimony was for the purpose of obtaining an immigration benefit. "Whether a person has the subjective intent to deceive in order to obtain immigration benefits is a question of fact." *United States v. Hovsepian*, 422 F.3d 883, 887–88 (9th Cir. 2005) (en banc) (citing *Kungys v. United States*, 485 U.S. 759, 782 (1988)). As such, it can be established in the usual ways, including circumstantial evidence and reasonable inferences from the facts. *See United States v. Bucher*, 375 F.3d 929, 931 (9th Cir. 2004) ("[F]acts *and* reasonable inferences from those facts are the province of the trier of fact.").

Carias had no incentive to lie at the 2012 hearing when he testified that the signature on the asylum application was his. But by the 2015 hearing, when Carias said the opposite, the validity of the asylum application signature was central to Carias's ability to obtain relief from deportation. That signature was a near-identical match to the signature on the return receipt from a 1996 order to show cause ("OSC"). If Carias could convince the IJ that he was not served with the 1996 OSC (and did not sign the return receipt), he could then avoid the stop-time rule, which

3

would allow him to meet the continuous-presence requirement for suspension of deportation. *See Ram v. INS*, 243 F.3d 510, 512, 516, 518 (9th Cir. 2001). Thus, substantial evidence supports that the false statements were made for the purpose of obtaining an immigration benefit. *See Bernal v. INS*, 154 F.3d 1020, 1022–23 (9th Cir. 1998).

Carias offers no evidence to refute these factual findings. He instead relies on a variety of unavailing legal arguments and excuses. Carias argues that false testimony must go to the "heart of the claim," but the Supreme Court has already held otherwise. *Kungys*, 485 U.S. at 779–80; *see also Ramos*, 246 F.3d at 1266. Carias also asserts that his testimony "did not create any immigration benefit," but that does not matter. *See Ramos*, 246 F.3d at 1266 ("Whether [the petitioner] eventually received benefits because of the false testimony is irrelevant; the statute only refers to statements made 'for the purpose of obtaining' any immigration benefits, not that resulted in such benefits.").

Carias suggests that the discrepancy in testimony was merely "the product of forgetfulness" given "the passage of time between the 2012 hearing and the 2015 hearing." But this argument was already raised before and rejected by the IJ. At the hearing, Carias tried to explain his inconsistent testimony by saying that that he did not remember his previous testimony. The BIA correctly recognized that the IJ was entitled to reject this explanation as insufficient. *Fisher v. INS*, 79 F.3d 955, 965

4

(9th Cir. 1996) (en banc) (recognizing that we afford "substantial deference" to an IJ's credibility findings) (citation omitted). Under the circumstances, forgetfulness does not explain why Carias would recognize his own signature during the 2012 hearing and testify accordingly, but then fail to recognize that the same document bore his signature in 2015.

Finally, Carias tries to explain away his inconsistent testimony by pointing to the similarity between the signature on the asylum application and one on a "Record of Interpreter Oath" document. But regardless of any similarity, this document does not explain Carias's contradictory testimony between the 2012 and 2015 hearings. Nor did Carias testify that this is what prompted him to change his testimony about the signature on his asylum application. *See Carillo-Gonzalez v. INS*, 353 F.3d 1077, 1079 (9th Cir. 2003) ("[Petitioner] forwards this claim solely through the argument of her counsel, which does not constitute evidence.").

Because Carias cannot demonstrate his good moral character, we need not reach the question of whether he satisfied the continuous-presence requirement to be eligible for suspension of deportation.[1]

For the foregoing reasons, the petition for review is **DENIED.**

---

[1] Nor do we reach Carias's argument that the IJ's failure to grant his motion to transfer violated his right to due process since he did not meaningfully raise this argument. *See Maldonado v. Morales*, 556 F.3d 1037, 1048 n.4 (9th Cir. 2009) ("Arguments made in passing and inadequately briefed are waived.").